IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEROME G. SULLINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-60-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

Joseph M. Bernstein, Esq.  Counsel for petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

MEMORANDUM OPINION

March 28, 2013
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Jerome Sullins ("Sullins"). (D.I. 8) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2004, Delaware State Police Detective Vincent Clemons learned from a confidential informant ("CI") that Sullins had crack cocaine for sale at his residence on Carter Street in Wilmington. *Sullins v. State*, 930 A.2d 911, 912 (Del. 2007). At Clemons' request, the CI phoned Sullins and arranged to buy cocaine from him. *Id.* Clemons then notified the Wilmington police of the impending drug transaction. Because Sullins was on probation, Wilmington police also notified officials at Probation and Parole. *Id.* at 913. Probation officers, accompanied by Wilmington police, drove to Sullins' Carter Street residence, where Sullins was standing in his doorway. Upon seeing the probation officers, whose shirts identified them as such, Sullins went inside his house and shut the door. The officers followed. While inside, the officers heard noises coming from the second floor, and ordered Sullins to surrender. Sullins complied. He came downstairs from a second floor bedroom, and was apprehended in the kitchen. A search uncovered $1,630 on Sullins' person; two bags of crack cocaine weighing approximately two and one half ounces in the basement; and an electronic scale. Sullins admitted that the drugs belonged to him. *Id.*; *State v. Sullins*, 2009 WL 1065856 (Del. Super Ct. Apr. 20, 2009)(clarifying that the search was performed by probation officers, not police officers).

On June 14, 2004, Sullins was indicted on charges for: (1) trafficking in cocaine in excess of fifty grams; (2) possession with intent to deliver cocaine; (3) maintaining a dwelling for keeping controlled substances; (4) possession of drug paraphernalia; and (5) resisting arrest. *Sullins*, 930 A.2d at 913.

Sullins' first trial began on February 15, 2005, and ended in a mistrial the very next day. *Id.* Sullins' second trial was scheduled to proceed on May 19, 2005, but he failed to appear. Sullins eventually proceeded to trial in April 2006. A Delaware Superior Court jury convicted Sullins of all the drug charges, but acquitted him of the resisting arrest charge. Sullins appealed, and the Delaware Supreme Court affirmed his convictions in July 2007. *Id.* at 914.

In February 2008, Sullins filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court granted the Rule 61 motion in part, and denied it in part. *See State v. Sullins*, 2008 WL 1922292 (Del. Super. Ct. Apr. 25, 2008). After several remands to the Superior Court for additional fact-finding, the Delaware Supreme Court affirmed the Superior Court's decision. *Sullins v. State*, 984 A.2d 124 (Del. 2009), *rearg't den.*, (Del. Nov. 23, 2009).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>      (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D.

Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
>
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011). The Supreme Court recently expanded the purview of the *Richter* presumption in *Johnson v. Williams*, ___ U.S. ___, 133 S.Ct. 1088 (Feb. 20, 2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised

in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Johnson*, 133 S.Ct. at 1095-96. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at 1091. As explained by the *Johnson* Court,

> because it is by no means uncommon for a state court to fail to address separately a federal claim that the court has not simply overlooked, we see no sound reason for failing the apply the *Richter* presumption in cases like the one before us now. When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.

*Id.* at 1096.

Finally, when reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

### III. DISCUSSION

Sullins asserts two grounds for relief in his petition: (1) trial counsel provided ineffective assistance by failing to file a motion to suppress evidence seized from his home; and (2) his

5

retrial should have been barred by the double jeopardy clause. The court will review the claims *in seriatim.*

### A. Claim One: Ineffective Assistance of Counsel

In claim one, Sullins contends that counsel provided ineffective assistance by failing to file a motion to suppress evidence seized during a warrantless search of his residence and for failing to file a motion to suppress statements he made to police officers during the search. Sullins raised this same claim in his Rule 61 motion. The Superior Court denied the claim, and Sullins appealed. On post-conviction appeal, the Delaware Supreme Court liberally construed Sullins' argument to be that the search of his home by the Wilmington police, accompanied by probation officers, was illegal because the probation officers did not independently determine the reliability of the information provided by the state police detective's confidential informant. Sullins argued that this action violated *Culver v. State*, 956 A.2d 5 (Del. 2008), which held that probation officers must independently assess the reliability of information provided by police officers before conducting a warrantless search of a probationer's home. Sullins also briefly asserted that the search was illegal because the "probation department [failed] to follow 7.19 procedures," and because the participation of the police in the search and seizure violated the procedures of probation and parole. (D.I. 19, Def's Resp. to State's Ans. Br. (Sept. 22, 2008) in *Sullins v. State*, No.216,2008, at Conclusion; D.I. 19, Def's Resp. to Del. Sup. Ct (May 7, 2009) in *Sullins v. State*, No.216,2008 at 3)

The Delaware Supreme Court remanded the case to the Superior Court in order to expand the record with defense counsel's affidavit in response to Sullins' claim. On remand, the Superior Court noted that *Culver* was not decided until after Sullins' conviction and, even if *Culver* pre-existed Sullins' case, it was distinguishable because the information here was

obtained first from Detective Clemmons. Consequently, the Superior Court adhered to its initial opinion denying relief. *State v. Sullins*, 2009 WL 1065856, at *1 (Del. Super. Ct. Apr. 20, 2009).

The case returned to the Delaware Supreme Court and, after supplemental briefing, the Delaware Supreme Court perceived an inconsistency between the Superior Court's original disposition as describing a police search and the opinion on remand as describing a search by probation officers. The Delaware Supreme Court reasoned that the question whether trial counsel was ineffective turned on whether the search was a "police search" or a "probationary search," explaining that

> if the search was a warrantless "police search," then Sullins' counsel was likely ineffective. That is, it would have been objectively unreasonable for counsel not to move to suppress, because warrantless police searches of a home are presumptively illegal and no exception to the warrant requirement appears applicable. [] If, however, the search was probationary, then counsel was likely not ineffective in failing to move to suppress.

*See Sullins*, 2009 WL 3417877 at *2. As a result, the Delaware Supreme Court remanded the case again to the Superior Court to clarify the discrepancy. On this second remand, the Superior Court opined that, "the record [] is crystal clear that the search was performed by probation officers," and definitively found that the search was a proper administrative search conducted by those probation officers. *State v. Sullins*, 2009 WL 3022116 (Del. Super. Ct. Sept. 27, 2009). Thereafter, the Delaware Supreme Court affirmed the Superior Court's denial of Sullins' ineffective assistance of counsel claim, holding that "because the search of Sullins' residence was performed by probation officers, and *Culver* is inapplicable because it had not yet been decided, counsel's actions in not moving to suppress did not fall below the standard of reasonableness." *Sullins*, 2009 WL 3417877.

7

The court notes that Sullins is not re-asserting his argument that counsel was ineffective for failing to file a suppression motion based on *Culver*. Rather, Sullins contends that counsel was ineffective for not moving to suppress the evidence on the grounds that the probation officers' search violated their own internal procedures, namely, Procedure 7.19.

The State contends that Sullins procedurally defaulted this claim by presenting it for the first time to the Delaware Supreme Court in his post-conviction appellate reply brief, rather than in his opening post-conviction appellate brief. The State asserts that the claim should be denied as procedurally barred, because Sullins has not provided any cause for the default, nor demonstrated prejudice resulting from the default. The court, however, is not persuaded by the State's procedural default argument. Sullins presented both his *Culver* argument and the instant argument to the Delaware Supreme Court for the first time in his post-conviction appellate reply brief. (D.I. 19) If his presentation of the Culver argument satisfied the exhaustion doctrine, the court fails to see why the same presentation of the instant argument does not satisfy the exhaustion doctrine. Moreover, given the numerous remands and re-characterizations of Sullins' arguments to the Delaware state courts, and the fact that Sullins did, in fact, raise the issue prior to the first remand on post-conviction appeal, the court concludes that Sullins exhausted state remedies for the instant argument.

In turn, pursuant to *Johnson,* the court views the Delaware Supreme Court's decision as adjudication of the instant claim. *Johnson,* 133 S.Ct. at 1096. Thus, the court can only grant habeas relief if the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim was contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S.

8

668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Delaware Supreme Court applied the *Strickland* standard in affirming the Superior Court's decision. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

9

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied *Strickland* in denying Sullins' claim. The court again notes that Sullins is not re-asserting his argument that counsel was ineffective for failing to file a suppression motion based on *Culver*. Rather, Sullins contends that counsel was ineffective for not moving to suppress the evidence on the grounds that the probation officers' search violated their own internal procedures, namely, Procedure 7.19. Sullins creatively crafts this argument by first contending that the court should apply the "law of the case doctrine" and reject the Delaware Supreme Court's finding on post-conviction appeal that the search was conducted by probation officers. According to Sullins, the law of the case doctrine requires this court to rely on the Delaware Supreme Court's factual description in its decision on direct appeal that police officers conducted the search. Implicit in this argument is a sub-argument that the Delaware Supreme Court unreasonably applied the law of the case doctrine in finding that the search was conducted by probation officers. Because the answer to this sub-argument is potentially determinative of Sullins' other "law of the case" argument, the court will address the sub-argument first.

> As explained by the Supreme Court, the "law of the case doctrine" posits that,
>
> [w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This doctrine directs a court's discretion it does not limit the tribunal's power. Accordingly, the doctrine does not apply if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice.

*Pepper v. United States*, 131 S.Ct. 1229, 1250-1251 (2011)(internal quotations and citations omitted). In Delaware, the "law of the case doctrine" has been described as follows:

> [o]nce a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless a compelling reason to do so appears. The law of the case doctrine requires that matters

10

>previously ruled upon by the same court should be put to rest. The doctrine comes into play, however, only when a prior decision actually or necessarily decides an issue.

*Jackson v. Minner*, 2013 WL 871784, at *3 (Del. Super. Ct. Mar. 1, 2013)(internal citations omitted). Clearly, neither Delaware's "law of the case doctrine" nor the Federal "law of the case doctrine" preclude a court "from reexamining the prior rulings in [a] case when the factual premises of those prior rulings are demonstrated to have been mistaken." *Hamilton v. State*, 831A.2d 881, 887 (Del. 2003); *see United States v. Hoffecker*, 530 F.3d 137, 165 (3d Cir. 2008)("the law of the case doctrine does not . . . set a trial court's prior ruling in stone, especially if revisiting those rulings will prevent error."). In Sullins' case, the Delaware Supreme Court perceived a possible factual error because the Superior Court inconsistently referred to probation officers and police officers in its two Rule 61 opinions. The Delaware Supreme Court remanded the case so that the Superior Court could specifically address this possible error, and then accepted the Superior Court's factual determination that the record clearly demonstrated that probation officers, not police officers, conducted the search. Given the Delaware Supreme Court's perception of a factual discrepancy and/or error, the court concludes that the Delaware Supreme Court's reasonably departed from the law of the case doctrine and adopted the Superior Court's clarification of the facts regarding the search.

Having determined that the Delaware Supreme Court reasonably departed from the law of the case doctrine, the court must defer to the Delaware Supreme Court's factual determination that the search was probationary and not a police search. As such, Sullins' argument that counsel should have moved to suppress the results of the search on the grounds that police were more substantially involved than permitted under the Department of Correction procedures in place at the time of the search necessarily fails. For instance, Sullins contends that counsel should have

11

known that the search violated the following two sections of Delaware Department of Corrections, Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001):

> 3. Officers should seek the assistance of other law enforcement officials when conducting a search of living quarters or property. This is to provide security only and they should not assist in the search.
>
> 4. Searches should never be made solely on the basis of a request from law enforcement officials, but should be the decision of the Officer.

Considering that the search of Sullins' residence was a probationary search, Sullins cannot establish a violation of Procedure 7.19, No. 3. As for Procedure 7.19, No. 4, the court acknowledges that the record reveals that a police officer informed the Department of Probation and Parole about a conversation between the CI and Sullins regarding a drug transaction. However, this fact, on its own, does not presumptively show a violation of No. 4. Significantly, Sullins has not demonstrated, and nothing in the record suggests, that the police officer "requested" the probation officer to search Sullins' residence. Rather, the record demonstrates that the police officer relayed the information about the impending drug transaction to probation officer Robyn Doherty, who then requested a supervising officer to grant permission to conduct an administrative search of Sullins' residence. *Sullins*, 2009 WL 3022116, at *1. The record also demonstrates that the "Arrest-Search Checklist" of the Probation Office was appropriately filled out and signed by the proper officer. *Id* at *2. Based on this record, the court cannot conclude that Sullins has demonstrated a violation of Procedure 7.19, No. 4.

If the probation officers did not violate Procedure 7.19 No. 3 or No. 4, then defense counsel did not perform ineffectively by failing to file a motion to suppress on this ground. Thus, the court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying claim one. Accordingly, the court will deny claim one

### B. Claim Two: Double Jeopardy

In his next claim, Sullins contends that his retrial should have been barred on double jeopardy grounds because the prosecutor goaded him into moving for a mistrial. He asserts that:

> The prosecutor had been warned by the judge not to mention the role of the CI. Rather than framing a question that complied with the court's warning, the prosecutor asked an open ended question that invited a repeat reference to the CI, which is precisely what occurred.

(D.I. 21 at 8)

On direct appeal, the Delaware Supreme Court denied this argument as meritless, holding that:

> despite Sullins' contrary assertion, there was no judicial or prosecutorial goading that would negate the voluntary nature of Sullins' motion for a mistrial. Although the prosecutor elicited inadmissible testimony from Detective Clemons, there is no evidence that the prosecutor sought to goad the defense into moving for a mistrial. Indeed, the prosecutor seemed unaware of his mistake and contested the defendant's mistrial motion after the court's mistrial declaration.

*Sullins*, 930 A.2d at 916. Given the Delaware Supreme Court's adjudication of the instant argument, Sullins will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

As a general rule, the double jeopardy clause prohibits any person from being "twice put in jeopardy of life or limb" based on the same offense. U.S. Const. amend. V. However, if the defendant seeks a mistrial, or if the mistrial was compelled by a "manifest necessity," the double jeopardy clause does not prevent a subsequent prosecution of the defendant on the same offense. *See United States v. Dinitz*, 424 U.S. 600, 607 (1976).

In *Oregon v. Kennedy*, 456 U.S. 667 (1982), the Supreme Court identified a narrow exception to the rule that a mistrial sought by the defendant cannot violate the double jeopardy clause. Pursuant to *Kennedy*, a defendant may not be re-tried if his motion for a mistrial was the

13

result of judicial or prosecutorial impropriety that was intended to provoke or goad the defendant into filing the motion. *Id.* at 679. Determining whether a prosecutor intended to goad the defense "merely calls for the court to make a finding of fact." *Id.* at 675.

The Delaware Supreme Court identified *Kennedy* as providing the standard applicable to claim two. Therefore the Delaware Supreme Court's decision was not contrary to clearly established Federal law.

The court further concludes that the Delaware Supreme Court reasonably applied *Kennedy* and its progeny to the facts of Sullins' case. Although Sullins contends that the prosecutor's careless questioning constituted improper goading under *Kennedy*, the court is not persuaded. As explained by the Third Circuit, "[c]ase law following *Kennedy* and *Curtis* has consistently emphasized that application of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case." *United States v. Williams*, 472 F.3d 81, 85-86 (3d Cir. 2007). Even if the court accepts Sullins' contention that the prosecutor in this case engaged in careless questioning, nothing in the record suggests that the prosecutor actually intended to provoke a mistrial through such carelessness. Additionally, given Sullins' failure to provide clear and convincing evidence to the contrary, the court accepts the Delaware Supreme Court's factual determination that the prosecutor's actions did not constitute "goading" for double jeopardy purposes.

Having determined that the prosecutor did not intentionally goad or provoke Sullins into requesting a mistrial, the court concludes that the Delaware Supreme Court reasonably applied *Kennedy* in denying the instant argument. Accordingly, the court will deny claim two for failing to satisfy the requirement of § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Sullins' petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Sullins' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing. An appropriate order shall issue.